UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____

№ 03-CV-4892 (JFB) (MLO)
_____

ATRONIC INTERNATIONAL, GMBH,

Plaintiff,

VERSUS

SAI SEMISPECIALISTS OF AMERICA, INC.,

Defendant.
_____

MEMORANDUM AND ORDER
August 29, 2007
_____

JOSEPH F. BIANCO, District Judge:

Plaintiff Atronic International, GmbH ("Atronic"), brought this action against defendant SAI Semispecialists of America, Inc. ("SAI"), claiming breach of contract regarding the sale of computer semiconductor chips. On September 15, 2007, this Court denied the parties' cross-motions for summary judgment, and granted plaintiff's motion to strike certain evidence offered by defendant. Plaintiff now moves for reconsideration and/or reargument of this Court's denial of plaintiff's motion for summary judgment. For the reasons that follow, plaintiff's motion is denied.

I. BACKGROUND

A. The Facts

The Court presumes the parties' familiarity with the underlying facts of this case, as set forth in this Court's previous decision. Thus, for the purposes of resolving the instant motion, the Court briefly recites the holding that plaintiff asks this Court to reconsider.

By Memorandum and Order dated September 15, 2007, this Court denied the parties' cross-motions for summary judgment (hereinafter, "the Decision"). In the Decision, the Court rejected Atronic's motion for partial summary judgment as to the issue of SAI's breach of a contract that allegedly imposed the following obligations on SAI: (1) to deliver 20,000 TI Graphics Processors ("processors") under the terms of the parties' agreement as set forth in a purchase order that Atronic sent to SAI via e-mail on October 19, 2002 (hereinafter, "the October 19 purchase order"); and (2) to deliver 20,000 additional processors, pursuant to an option clause in the October 19 purchase order that Atronic purportedly exercised in Mid-December 2001.

In the Decision, this Court found that, although there was no writing signed by SAI, the "merchant exception" of New York's

Statute of Frauds permitted plaintiff "to proceed with [its] breach of contract claim despite the Statute of Frauds." (Decision, at 5.) Nevertheless, noting that the "*only* consequence of the merchant exception is to remove the bar of the Statute of Frauds," the Court further found that SAI had demonstrated a genuine issue of material fact as to whether "there was mutual assent [by the parties] to the terms in the October 19 revised purchase order, as a matter of law." (Decision at 5.) Specifically, the Court found that SAI had presented testimonial evidence that, notwithstanding the written terms of the October 19 purchase order, the parties' agreement included "the condition that the order was 'open' and 'subject to prior sale.'" (Decision at 6.) As such, the Court found that:

> If SAI's evidence that the agreement between the parties included a provision that the order was subject to prior sale is credited, as this Court must in considering the instant motion for summary judgment, there exists a disputed issue of material fact as to whether SAI breached the terms of the agreement, either as to the initial 20,000 TI Graphics Processors, or as to the additional 20,000 option processors. Accordingly, Atronic's motion for summary judgment is denied.

(Decision at 6.)

B. Procedural History

This case was re-assigned to the undersigned from the Honorable Thomas C. Platt on February 23, 2006. The Decision was issued on September 15, 2006. Plaintiff moved for reconsideration and/or reargument of the Decision pursuant to Rule 59(e) of the Federal Rules of Civil Procedure and Local Civil Rule 6.3 on November 7, 2006.

II. STANDARD OF REVIEW

Motions for reconsideration may be filed pursuant to Federal Rules of Civil Procedure 59(e). The decision to grant or deny a motion for reconsideration falls squarely within the discretion of the district court. *See Devlin v. Transp. Comm'ns Int'l Union*, 175 F.3d 121, 132 (2d Cir. 1999). "The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked . . . that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) (internal citations omitted). Similarly, Local Civil Rule 6.3 provides that a party moving for reconsideration must "set[] forth concisely the matters or controlling decisions which [the party] believes the court has overlooked." In any event, "reconsideration of a previous order is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *In re Health Mgmt. Sys. Inc. Sec. Litig.*, 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000); *see also Medoy v. Warnaco Emples. Long Term Disability Ins. Plan*, No. 97 Civ. 6612 (SJ), 2006 U.S. Dist. LEXIS 7635, at *4 (E.D.N.Y. Feb. 15, 2006) ("The standard . . . is strict in order to dissuade repetitive arguments on issues that have already been considered fully by the Court.").

## III. DISCUSSION

Plaintiff argues that, in denying plaintiff's motion for summary judgment, this Court "clearly erred" in four ways: (1) it engaged in a Statute of Frauds analysis where defendant had not raised the Statute of Frauds as an affirmative defense; (2) it determined that there was no "signed writings" between the parties that established a contractual relationship between the parties as a matter of law; and (3) it relied on evidence that the parties had orally agreed that the purchase order was "open" and "subject to prior sale." (*See* Pl.'s Mem. at 2.) For the reasons set forth below, the Court finds that plaintiff has failed to present any "controlling decisions or data that the court overlooked . . . that might reasonably be expected to alter the conclusion reached by the court," and, thus, denies plaintiff's motion. *Shrader*, 70 F.3d at 257. Furthermore, as discussed *infra*, many of the arguments presented by plaintiff have already been considered by the Court at the summary judgment stage; accordingly, as to those arguments, the Court notes that "[a] motion for reconsideration 'is not a motion to reargue those issues already considered when a party does not like the way the original motion was resolved.'" *Davey v. Dolan*, No. 05 Civ. 5513 (RJH), 2007 WL 2212909, at * (S.D.N.Y. Aug. 3, 2007) (quoting *In re Initial Pub. Offering Antitrust Litig.*, No. 01 Civ. 2014(WHP), 2004 WL 789770, at *1 (S.D.N.Y. Apr. 13, 2004)).

### 1. Statute of Frauds

The Court rejects plaintiff's argument that this Court improperly addressed the issue of the Statute of Frauds at the summary judgment stage.

It was not improper, or, as plaintiff asserts, contrary to "controlling law" (Pl.'s Mem. at 1), for the Court to raise *sua sponte* the Statute of Frauds issue. It is well-settled that, with regard to affirmative defenses named in Rule 8(c), which expressly includes the "affirmative defense" of "statute of frauds," "must be pled and proved" by a party. *Doe v. Pfrommer*, 148 F.3d 73, 80 (2d Cir. 1998) (citing *Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 350 (1971)); Fed. R. Civ. P. 8(c). However, the Second Circuit has held that while such defenses "are 'ordinarily' not to be recognized when not in the answer, . . . no absolute bar to the consideration of such claims exists.'" *Pfrommer*, 148 F.3d at 80 (quoting *Salahuddin v. Jones*, 992 F.2d 447 (2d Cir. 1993)) (additional internal citations omitted); *see Amer. Fed. Group, Ltd. v. Rothenberg*, 136 F.3d 8987, 909-10 (2d Cir. 1998) (permitting party to assert a statute of frauds defense for the first time *on appeal*, and noting that "[w]aiver by failure to plead is indeed the general rule, but it is a rule 'not applied automatically and as a practical matter there are numerous exceptions to it'") (citing 5 Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure* § 1278, at 491 (2d. ed. 1990)); *Leonhard v. United States*, 633 F.2d 599, 609 n.11 (2d Cir. 1980) (affirming the district court's *sua sponte* dismissal of certain claims based on the affirmative defense of statute of limitations even where no party had raised the defense); *see also Mowbray v. Cameron Cty., Tex.*, 274 F.3d 269, 281 (5th Cir. 2001) ("[W]here all of the relevant facts are contained in the record before us and all are uncontroverted, we may not ignore their legal effect, nor may we decline to consider the application of controlling rules of law to dispositive facts, simply because neither party has seen fit to invite our attention by technically correct and

exact pleadings.") (internal quotation marks and citation omitted); Law *v. Law*, 922 F. Supp. 1106, 1113 (E.D.Va. 1996) (raising *sua sponte* the issue of the Virginia Statute of Frauds upon resolution of a motion to dismiss).

In *Pfrommer*, the Second Circuit found that there was a "strong public policy" in favor of applying the doctrine of collateral estoppel as a defense, and, thus, found that a district court properly raised *sua sponte* the defense, even where it was not pleaded or proved by the defendant. 148 F.3d at 80. Moreover, the Second Circuit in *Pfrommer* noted that the only "pre-decision reference" to the affirmative defense in question was in a brief submitted by the plaintiff, the party opposing the defense, wherein the plaintiff "pointed out that [the affirmative defense] did not affect the court's review of this case." *Id.* at 80.

Similarly, in the instant case, the Court did not err in raising *sua sponte* the issue of the Statute of Frauds. As in *Pfrommer*, the "only pre-decision reference" to the Statue of Frauds in this action was in a brief submitted by plaintiff, the party opposing the defense, wherein plaintiff "pointed out that [the Statute of Frauds] did not affect the court's review of this case." 148 F.3d at 80; (*see* Pl.'s Summary Judgment Mem. at 9 (arguing that the "merchant exception" of New York's Statute of Frauds, as set forth in N.Y. U.C.C. § 2-201(2), required this Court to find that there was an enforceable agreement between he parties). Indeed, because plaintiff asserted the specific provision of the Statute of Frauds that the Court addressed in the Decision, it is beyond doubt that plaintiff can claim no surprise or prejudice from the Court's analysis of that issue. Accordingly, the Court declines to reconsider the Decision on the ground that it improperly engaged in a Statute of Frauds analysis.

Furthermore, even assuming *arguendo* that the Court erred in conducting a Statute of Frauds analysis where the defense was not pleaded, it is beyond doubt that such an error did not "alter the conclusion reached by the court" as to plaintiff's summary judgment motion. *Shrader*, 70 F.3d at 257. In fact, although the Court raised the Statute of Frauds issue *sua sponte*, it ruled *in plaintiff's favor*, by concluding that the "merchant exception" to the Statute of Frauds applied in the instant case. Specifically, in the Decision, the Court determined that plaintiff could "proceed with [its] breach of contract claim *despite* the Statute of Frauds," and that the "*only* consequence of the merchant exception [set forth in N.Y. U.C.C. § 2-201(2)] is to remove the bar of the Statute of Frauds." (Decision at 5 (emphases supplied).) As such, the Court proceeded to analyze the question of whether there was a triable issue regarding the parties' mutual assent to the terms of the purported contract. The Court's resolution of *that* issue – independent of its Statute of Frauds analysis – led the Court to conclude that there was "a disputed issue of material fact as to whether SAI breached the terms of the agreement." (*Id.* at 6.) Accordingly, because the Court determined that the Statute of Frauds did not preclude summary judgment in plaintiff's favor, it is clear that any error in the Court's analysis of that issue would not have altered the Court's conclusion as to plaintiff's summary judgment.

2. The Absence of a Signed Writing that Satisfied the Statute of Frauds

The Court also rejects plaintiff's argument that the Court erred in declining to find, as a matter of law, that a series of correspondence between the parties was "sufficient" to indicate that a contract had been made between the parties and was signed by SAI,

"the party against whom enforcement is sought." *See* N.Y. U.C.C. § 2-201(1).

In the Decision, the Court rejected Atronic's argument that a fax and an e-mail sent by SAI to Atronic constituted, respectively, a written counteroffer to Atronic and a confirmation by SAI of the parties' agreement. Specifically, the Court found, viewing the evidence in the light most favorable to SAI, the non-moving party, that "there is no sufficient writing signed by the party to be charged, SAI, to satisfy the Statute of Frauds" or to establish the parties' mutual assent to the terms of the purported agreement. (Decision at 5-6.)

First, with regard to the fax sent by SAI, the Court found that it "merely consisted of hand written notations upon Atronic's [original] purchase order, [and] contained no signature or other notation which demonstrates an intent to authenticate the writing for the purposes of the statute of frauds." (*Id.*)

Second, with regard to the October 19, 2001, e-mail from SAI to Atronic, a reasonable jury could concluded that the contents of that e-mail, when viewed in the light most favorable to SAI, do not establish a contractual relationship between the parties. The e-mail merely states that "There are no problems. Everything is on schedule." (Pl.'s 56.1 ¶ 9.) It does not, however, refer to any binding agreement between the parties. Plaintiff argues that SAI's e-mail to Atronic – which contained a typed signature of an SAI representative – constitutes a "signed" writing, pursuant to case and statutory authority directing that "[an] electronic signature [] has the same validity and effect as . . . a signature affixed by hand." (Pl.'s Mem. at 7 (internal citations omitted).) However, plaintiff's argument misses the point. Although an e-mail may "suffice[] as much as a letter, a telegram or a fax to provide . . . objective indication of an existing agreement," *Bazak Intern. Corp. v. Tarrant Apparel Group*, 378 F. Supp. 2d 377, 384 (S.D.N.Y. 2005), the e-mail in question – regardless of the legal significance accorded to the typed "signature" it bears – is not, as discussed *supra*, "sufficient to indicate that a contract for sale has been made between the parties." N.Y. U.C.C. § 2-201(1).

Atronic fails to cite any controlling authority or facts which this Court overlooked in resolving this issue at the summary judgment stage. Atronic cites several cases in support of the proposition that multiple "signed and unsigned" writings may satisfy the Statue of Frauds when they "are read together." (*See* Pl.'s Mem. at 5 (citing *Stillwater Sales v. Summit Sportswear Co.*, No. 80 Civ. 0478 (GLG), 1980 U.S. Dist. LEXIS 13036, at *11-13 (S.D.N.Y. Aug. 12, 1980); *Crabtree v. Elizabeth Arden Sales Corp.*, 110 N.E.2d 551 (N.Y. 1953); and *Dietrich v. Chem. Bank*, 454 N.Y.S.2d 490 (N.Y. Sup. Ct. 1981)).) However, Atronic fails to offer any persuasive argument as to why these cases mandate reconsideration of this Court's finding that there was *no* signed writing that established a contractual relationship between the parties as a matter of law.

Indeed, as the cases cited by Atronic demonstrate, it is well-settled that, in order for a series of writings to satisfy the Statute of Frauds, "at least one writing establishing a contractual relationship between the parties must bear a signature, while unsigned writings must refer to the same transaction as set forth in the signed memorandum." *Stillwater Sales*, 1980 U.S. Dist. LEXIS 13036, at *12 (citing *Crabtree*, 110 N.E.2d at 555 ("[A]t least one writing, the one establishing a contractual

relationship between the parties, must bear the signature of the party to be charged, while the unsigned document must on its face refer to the same transaction as that set forth in the one that was signed."). As the Second Circuit has held:

> [T]he rule fashioned [by the New York Court of Appeals] in *Crabtree* to permit satisfaction of the Statute of Frauds by a series of signed and unsigned writings contains two strict threshold requirements. First, the signed writing must itself establish "a contractual relationship between the parties." [*Crabtree*,] 110 N.E.2d at 554. Second, the unsigned writing must "on its face refer to the same transaction as that set forth in the one that was signed." [*Id.* at 554.]

*Horn & Hardart Co. v. Pillsbury Co.*, 888 F.2d 8, 11 (2d Cir. 1989) (additional internal citations and quotations omitted). Here, as noted *supra*, the Court found that there was no signed writing that established, as a matter of law, a contractual relationship between the parties. (*See* Decision at 5.) Accordingly, the Court rejects plaintiff's argument that reconsideration is merited because a series of correspondence between the parties established their contractual relationship as a matter of law.

### 3. SAI's Evidence Opposing Plaintiff's Motion for Summary Judgment

In the Decision, the Court found that certain testimonial evidence offered by SAI demonstrated a genuine issue as to SAI's alleged breach of the parties' agreement. (*See* Decision at 5-6.) Specifically, SAI presented evidence that the parties had orally agreed that Atronic's October 19 purchase order was "open" and "subject to prior sale," "meaning that [SAI] would provide [the processors to Atronic] at the agreed upon prices as they became available on the market." (Decision at 3.) The Court found that this evidence sufficed to create a genuine issue as to the parties' mutual assent to the terms of the purported agreement. (Decision at 6.)

Atronic now asserts that this Court erred in relying on such evidence because it contradicted the express terms of Atronic's confirmatory memorandum (the October 19 purchase order), and, thus, was parol evidence barred by Section 2-202(2).[1] For the reasons

---

[1] Atronic also seeks to reargue this Court's conclusion that the October 19 purchase order constituted a confirmatory memorandum, and asserts that the Court should have considered it as one part of a signed, written contract between he parties. The Court rejects this argument for the reasons discussed *supra* regarding Atronic's series-of-writings argument, as well as the additional reason that, at the summary judgment stage, Atronic *itself* expressly asserted that the October 19 purchase order constituted a confirmatory memorandum under Section 2-201(2). Specifically, Atronic argued that:

> Between merchants, a writing from one party to the other confirming the transaction is sufficient [to satisfy the Statute of Frauds] "unless written notice of objection to its contents is given within ten days after it is received." U.C.C. § 2-201(2). . . . Atronic sent an amended, written purchase order on October 19, 2001. SAI received the amended purchase order and did not write back to Atronic objecting to it.

(Pl.'s Summary Judgment Mem., at 9.) Thus, with regard to the instant motion for reconsideration, Atronic not only seeks to reargue an issue previously resolved by this Court, but asserts arguments that *directly contradict* its prior

that follow, the Court rejects Atronic's motion for reconsideration on this basis.

Section 2-202 provides, in relevant part, that:

> Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented . . . by course of dealing or usage of trade . . . or by course of performance . . . .

N.Y. U.C.C. § 2-202. Thus, evidence of a prior oral agreement cannot be admitted to contradict the terms of a confirmatory memorandum that was intended "as a complete and exclusive statement of an agreement" between the parties. *See Compania Sud-Americana de Vapores, S.A. v. IBJ*, 785 F. Supp. 411, 433 (S.D.N.Y. 1992). However, "[i]t is the function of the court to determine whether a writing was intended as a complete and exclusive statement of an agreement as a question preliminary to the application of the parol evidence rule." *Lehman Bros. Inc. v. Canadian Imperial Bank of Commerce*, no. 97 Civ. 8226 (WHP), 2000 WL 1425098, at *11 (S.D.N.Y. Sep. 27, 2000) (citing Sud-Americana, 785 F. Supp. at 432; *Restatement (Second) of Contracts* § 209 cmt. c (1981); and 3 *Corbin on Contracts* § 582, at 450 (1963)). "When an agreement is not deemed a complete integration, the parol evidence rule does not apply and extrinsic evidence of a separate oral agreement can be considered." *Id.* (citing *Bourne v. Walt Disney Co.*, 68 F.3d 621, 627-28 (2d Cir. 1995)) (additional citation omitted).

Here, the Court finds that it correctly considered the evidence regarding the oral conditions because it is unclear that the parties intended the October 19 purchase order to be the complete integration of all the mutual promises of the parties.[2] Although the

---

position on the issue. Accordingly, the Court declines to reconsider its conclusion that the October 19 purchase order constituted a confirmatory memorandum because, in addition to the reasons discussed *supra*, "[a] motion for reconsideration 'is not a motion to reargue those issues already considered when a party does not like the way the original motion was resolved.'" *Masi v. Steely*, 242 F.R.D. 278, 287 (S.D.N.Y. 2007) (quoting *In re Initial Pub. Offering Antitrust Litig.*, No. 01 Civ. 2014 (WHP), 2004 WL 789770, at *1 (S.D.N.Y. Apr. 13, 2004)); *see Shrader*, 70 F.3d at 257 ("[A] motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided.").

[2] In support of its argument that the purchase order constituted an integrated agreement, Atronic cites a single case, *Fadex Foreign Trading Corp. v. Crown Stell Corp.*, 70 N.Y.S.2d 892 (N.Y. App. Div. 1947), which Atronic asserts is "directly on point to the facts in this case." (Pl.'s Mem. at 11.) The Court disagrees, and finds that *Fadex* is distinguishable on its facts. In *Fadex*, the court found that four purchase orders were, in fact, "contracts" where the defendant had separately confirmed its receipt of each order by stating that "We hereby confirm acceptance of said order which will have our prompt attention." 70 N.Y.S.2d at 893. The court in *Fadex* specifically found that because "the contract has become effective, an oral condition that delivery of the [product at issue] need not be made until the defendant succeeds in acquiring it becomes a condition subsequent which is unenforceable under the parol evidence rule." *Id.* at 895. By

7

purchase order contained an integration clause,[3] it was not signed by anyone from SAI and, as discussed *supra*, SAI's subsequent correspondence with Atronic did not unambiguously establish a contractual relationship between the parties. As the Second Circuit has held:

> Ordinarily, a merger clause provision indicates that the subject agreement is completely integrated, and parol evidence is precluded from altering or interpreting the agreement. However, because the parol evidence rule rests on the rationale that a later written agreement has supplanted prior negotiations, it follows that the rule does not come into play until the existence of an enforceable written agreement has been shown.

*Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16, 21 (2d Cir. 1997) (internal quotation marks and citation omitted). Here, even assuming *arguendo* that the evidence of the oral conditions contradicted the terms of the October 19 purchase order, there was no bar to this Court considering such evidence at summary judgment because it is unclear that the parties intended the purchase order to be a final expression of an enforceable written agreement.[4] *See Genecco Produce, Inc. v. Sol Group Mktg. Co.*, No. 04 Civ. 6282 (CJS), 2006 WL 328385, at *6 (W.D.N.Y. Feb. 9, 2006) ("[T]he Court finds that there are issues of fact as to whether the parties intended defendant's invoices to be the final expressions of their agreements. For example, plaintiff never signed the invoices or otherwise affirmatively indicated that it agreed with them."); *Shop Vac Corp. v. BCL Magnetics Ltd.*, No. 04 Civ. 0262 (TJM), 2005 WL 2739161, at *5 (N.D.N.Y. Oct. 24, 2005) ("It is unclear whether the purchase order constitutes the entire contract. The purchase order is not signed by anyone from [the party against whom enforcement is sought], and . . . provides little detail as to the specifications of the [terms of the parties' agreement.]"); *Borman's, Inc. v. Olympic mills, Inc.*, No. 91 Civ. 4244 (LJF), 1993 WL 190344, at *3 (S.D.N.Y. June 2, 1993) (finding that a purchase order which contained a merger clause "was not intended by the parties to be the complete and exclusive statement of the parties' agreement" where,

---

contrast, as discussed herein, there remains a genuine issue as to whether the October 19 purchase order has "become effective" as a contract between the parties. Accordingly, SAI's evidence of an oral condition precedent to the purported agreement is not barred by the parol evidence rule.

[3] "[A] declaration in the contract that it is integrated is not conclusive, but is only a factor to be considered." *Restatement (Second) of Contracts* § 209 cmt. b (2007); *see also Shop Vac*, 2005 WL 2739161, at *5 n.9 ("Since an integration clause is often included in the modern, whether standardized or not, contract as a matter of routine, its presence does not necessarily establish that the parties, in fact, intended that the writing be the complete statement of their agreement. In other words, the fact that a contract contains a clause stating that it contains the entire contract and that no representation not set forth has been made, does not bar a finding that the writing was not intended as the complete and exclusive statement of the terms of the parties' agreement.") (internal quotations marks and citation omitted).

[4] "'Whether any specific written document has been assented to by the parties as the complete and accurate 'integration' of the terms of their contract is an ordinary question of fact.'" *McNamara v. Tug "DIANA L. MORAN"*, No. 87 Civ. 3096 (MBM), 1989 WL 106522, at *5 (S.D.N.Y. Sept. 6, 1989) (quoting *Corbin on Contracts* at 535 (One Vol. Ed. 1952)).

8

*inter alia*, only the party seeking to enforce the terms of the purchase order "prepared and filled out" the document"); *see also Tropical Leasing, Inc. v. Fiermonte Chevrolet, Inc.*, 439 N.Y.S.2d 566, 568 (N.Y. App. Div. 1981) (finding that parol evidence of an oral condition precedent did not contradict the terms of a purchase order which contained a written merger clause because the merger clause "has no significance until there is a contract").

Furthermore, even assuming *arguendo* that the October 19 purchase order constituted a final expression of an agreement between the parties, the Court correctly considered the evidence regarding the "open" and "subject to prior sale" conditions because it related to the parties' "usage of trade" and "course of performance," and, therefore, could have "supplemented" the terms of the agreement.[5] N.Y. U.C.C. § 2-202. That is, SAI presented sufficient evidence at summary judgment to demonstrate a genuine issue of fact concerning the parties' usage of trade and course of performance that, if credited by a jury, could demonstrate the parties' intent to be bound by the oral "open" and "subject to prior sale" conditions. *See Bazak*, 378 F. Supp. 2d at 390-91. Specifically, according to SAI, it obtained the buyer's agreement to such oral conditions as a matter of course where, as here, the processors requested were "obsolete" and, thus, difficult to procure on the open market. (*See* Dft.'s Summary Judgment Mem. at 12-13.) SAI asserted at summary judgment that this "method of dealing" resulted in SAI's "erratic" course of performance over the entirety of its business relationship with Atronic,[6] wherein the timing and volume of processors shipped to Atronic varied widely from one shipment to the next. (*Id.*; Connor Aff. ¶ 2.) Accordingly, because SAI has demonstrated a genuine issue as to whether the parties' usage of trade and course of performance supplemented the terms of the October 19 purchase order, the Court declines to reconsider its determination that evidence of the oral conditions created a genuine issue as to the parties' mutual assent to the terms of the alleged contract. *See Hoyt v. Andreucci*, 433 F.3d 320, 331-32 (2d Cir. 2006) (finding that "the parties course of conduct" may be considered where "the intent of the parties cannot be determined from the contractual language itself").

IV. Conclusion

In sum, plaintiff's motion for reconsideration and/or reargument is DENIED in its entirety.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: August 29, 2007
Central Islip, New York

---

[5] "A usage of trade is any practice or method of dealing having such regularity of observance in a place, vocation or trade as to justify an expectation that it will be observed with respect to the transaction in question. The existence and scope of such a usage *are to be proved as facts*." N.Y. U.C.C. § 1-205(2) (emphasis added).

[6] According to SAI, it first began shipping processors to Atronic in 1997. (Connor Aff. ¶ 2.)

* * *

The attorneys for the plaintiff are John J. Witmeyer, III, Esq., Edward M. Pinter, Esq., and Anthony Pirraglia, Esq., of Ford Marrin Esposito Witmeyer & Gleser, LLP, Wall Street Plaza, New York, New York 10005-1875. The attorneys for the defendant are James J. O'Rourke, Esq., of James J. O'Rourke & Associates, PLLC, 235 Brooksite Drive, Hauppauge, New York 11788, and Peter G. Goodman, Esq., of Morgenthau & Greenes, LLP, 575 Lexington Avenue, New York, New York 10022.